UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARSHALL ALEXANDER, ET AL. | CIVIL ACTION |
| VERSUS | NO. 07-262 |
| THE WACKENHUT CORPORATION | SECTION "N" (1) |

**ORDER AND REASONS**

Presently before the Court are cross motions for summary judgment filed by the parties (Rec. Doc. Nos. 51 and 54). As stated herein, **IT IS ORDERED** that Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. **IT IS FURTHER ORDERED** that Plaintiff's motion is **DENIED**.

**I.     Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to

2

summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II.  **Factual Background and Analysis**[1]

Plaintiffs are employed by Defendant to provide security services at the Waterford III nuclear facility near Taft, Louisiana. In this litigation, the Court is called to determine whether the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, requires Defendant to pay Plaintiffs for all or part of time spent by them at the nuclear facility before the start of their

---

[1]  The Court notes that the parties' submissions relative to these motions, which were noticed for hearing on June 11, 2008, totaled 300-400 pages of written argument and exhibits. Unfortunately, a substantial amount of the written discussion in the parties' briefs was duplicative and/or drafted in such a manner that required the Court to devote an inordinate amount of time to analyzing the submitted evidence and cited legal authorities. Further, the parties did not reference several decisions from the courts of this circuit that this Court found relevant to the issues in dispute, and, in some instances, failed to fairly characterize the pertinent evidence and pertinent legal authority. Given this, as well as the impending July 8th trial date, the Court's opinion is less detailed in terms of recitation of facts, analysis, and citation to evidence and legal authorities than the Court would prefer.

scheduled shifts. Defendant maintains that Plaintiffs were not entitled to compensation prior to the roll call that commenced at the scheduled work time (5:30 a.m. or p.m.) for each shift, unless a rare emergency required a security officer to begin his or her shift early. Under those circumstances, Defendant asserts the security officer would be paid for the extra time worked. Defendant also contends that any pre-shift time for which the Court might determine Plaintiffs are owed compensation is more than covered by the extra half hour pay that they receive for time at the end of their shifts, regardless of whether they actually are required to remain on duty beyond the scheduled 12 hours or not. According to Defendant, this practice was utilized to account for any delays officers might encounter in being relieved at the end of their scheduled shifts.

In support of their claims for additional compensation, Plaintiffs maintain that, during the time period relevant to this litigation, Defendant directed and expected them to obtain and don their security gear, which included weapons, ammunition, holsters, and duty keys, prior to the roll call session that began each 5:30 shift. Because there were (presumably) between 20-30 officers[2] assigned to each shift, this process took a substantial amount of time, according to Plaintiffs, because only one security officer at a time was allowed to enter the armory, where the gear in question was stored and donned.

For purposes of this motion practice, the parties appear to have agreed that this process took somewhere between 1-3 minutes for each person to complete.[3] Accordingly, explain

---

[2] The Court is not certain of the actual number of security personnel working on each shift. This information has yet to be released because of security concerns. The Court utilizes a range of 20-30 officers based on the parties' written submissions relative to their motions.

[3] The parties' submissions reveal that prior to October 2004, the "donning process" required that each officer show three forms of identification necessary for the issuance of security gear, sign for and obtain duty keys, retrieve his or her gun, gas mask, pepper spray, flash light, and hand cuffs, confirm that the gun was not already loaded, place a loaded magazine in to the gun, and

4

Plaintiffs, 20-30 persons could not obtain and don gear prior to the 5:30 roll call if everyone arrived only a few minutes before that time. Given this, and that Defendant did not assign each security officer a specific time prior to the 5:30 roll call to be present for donning gear, many of the security officers would arrive at the facility early to ensure they had their gear prior to roll coll and to stagger the donning process.

The Court, having extensively reviewed the parties' submissions and pertinent legal authorities, resolves the issues presented by the motions for summary judgment as set forth below. To the extent that Plaintiffs seek compensation for time spent waiting to enter the armory to don gear prior to roll call, and Defendant seeks dismissal of this claim with its motion, this aspect of Defendant's motion is granted. As presented, such time is expended on a "preliminary" activity for purposes of the Portal-to-Portal Act, 29 U.S.C. § 254, and, thus, is not compensable work time under the FLSA. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 39-42, 136 S. Ct. 514, 527-528 (2005) (time waiting to don integral and indispensable gear, which was "two steps removed" from the productive activity on the assembly line, was a preliminary, not principal, activity); 29 C.F.R. §790.3 (setting forth §4 of the Portal-to-Portal Act); §790.7(g) (time spent waiting to check in and out not ordinarily regarded as integral parts of the principal activity or activities); §790.8(c) (time spent waiting to check in and out generally characterized as non-compensable preliminary activity); §785.24 (same as §790.7(g)).

---

"load" his or her gun belt, which itself could be taken home or stored at the armory, with these items. After being checked by the attending supervisor, the security officer would then exit the armory and pick up a radio. Subsequent to October 2004, procedures were altered such that, upon entering the armory, the security officers would simply show their identification, retrieve their already loaded gun belts from the particular bin assigned to him or her, be checked by the supervisor, exit the armory, and pick up a radio.

With respect to Defendant's liability for time expended by Plaintiffs in the armory, thereafter grabbing a flashlight, and then waiting in the protected area for roll call, the Court finds that, on the showing made, entry of summary judgment in favor of either Defendant or Plaintiffs is not appropriate. Although it appears that Plaintiffs have the stronger arguments relative to these time periods, the Court is not prepared, at this juncture, to find that Plaintiffs have demonstrated that no genuine issue of material facts exist, and that they are entitled to judgment as a matter of law. Further, the evidence presented raises issues of credibility that are appropriately considered at trial.

At least with respect to the pending motions, the parties do not dispute that, for purposes of the FLSA and the Portal-to-Portal Act, Plaintiffs' donning of the aforementioned required gear, on Defendant's premises, constitutes "work" that is an "integral and indispensable" part of their principal activities as security officers for Defendant. Accordingly, this donning process itself constitutes a principal activity. *See IBP, Inc.*, 546 U.S. at 37, 136 S. Ct. at 525 ("Any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act."); 29 C.F.R. §790.8 (explaining "principal activities").[4]

Proceeding from this determination, the Court finds that triable issues exist with respect to whether the waiting time occurring between the time Plaintiffs finished donning their gear and roll call likewise is compensable work time. To explain, the Court first notes that this waiting time (as opposed to any time spent waiting to don) occurs *after* Plaintiff's first principal activity of the workday occurs. Thus, the "continuous workday" rule, if applicable, renders any work done thereafter (on that workday) compensable, unless it is deemed *de minimus* or otherwise is lawfully

---

[4] Principal activities are compensable work time under the FLSA *unless* rendered otherwise by an applicable exception to this rule. The Court discusses *infra* whether the *de minimis* doctrine precludes compensation for any otherwise compensable work time at issue in this dispute.

6

excluded from the coverage of the FLSA. *See, e.g., IBP, Inc.*, 546 U.S. at 28-29, 35, 136 S. Ct. at 520-21, 524-25 (discussing continuous workday rule and confirming that compensable donning and doffing of gear may define the outer limits of the workday); 29 C.F.R. §790.6 (explaining Portal-to-Portal Act provisions have no application to employee activities occurring after commencement of the first principal activity of the workday and before completion of the last principal activity of the workday).[5]

Second, for purposes of these statutes, "work" essentially is defined as time spent by an employee that is controlled or required by the employer and predominantly benefits the employer rather than the employee. *IBP, Inc.*, 546 U.S. at 25-26, 136 S. Ct. at 519 (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33, 65 S. Ct. 165, 168 (1944). As a person may be hired to do nothing, or to do nothing but wait for something to happen, work may or may not require physical or mental exertion. *Id.* (citing *Armour & Co. v. Wantock*, 323 U.S. at 132-33, 65 S. Ct. at 168 ("readiness to serve may be hired, quite as much as service itself. . . .")). Accordingly, waiting time is considered time worked, rather than time waiting to work, when the employer, rather than the employee, predominately benefits from it, and the employee is not able to effectively use the idle time for his or her own purposes. *Vega v. Gasper,* 36 F.3d 417, 425-26 (5th Cir. 1994); *see also Mireles v. Frio Foods*, 899 F.2d 1407, 1412-1413 (5th Cir. 1990); 29 C.F.R. §§ 785.16 -.17. This is a fact specific inquiry. *Mireles*, 899 F.2d at 1411; *see also* 29 C.F.R. §785.14 ("[w]hether waiting time is time worked depends upon particular circumstances").

---

[5] For purposes of the FLSA, "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc.*, 546 U.S. at 29, 136 S. Ct. at 521 (quoting 29 C.F.R. §790.6(b)).

Here, despite Defendant's protests to the contrary, Plaintiffs have established that triable issues exist with respect to whether their post-donning, pre-roll call waiting time constituted "work" for purposes of the FLSA. Significantly, Plaintiffs present a strong argument that this waiting time resulted from Defendant's own action or inaction. Specifically, Defendant directed the 20-30 security guards to don their gear prior to the 5:30 roll calls, but allowed only one security officer in the armory at a time. It also failed to establish a fixed, staggered arrival schedule that would have facilitated a smooth flow of security guards through the armory and minimized any waiting time as much as possible. Further, prior to the changes made in October 2004, donning the requisite gear consisted of several steps. Nor apparently were security guards allowed to don their gear prior to arriving for their shifts at the Waterford facility. Thus, under the circumstances, it seems that some waiting time was inevitable for many of the security guards on each shift.

Additionally, it seems that Defendant made little or no effort to restrict how early the security officers could arrive for work and don their equipment.[6] Indeed, certain deposed employees testified that supervisors instructed them to don their gear as soon as they had passed through the security turnstiles and entered the protected area.

A genuine issue likewise exists with respect to whether Defendant primarily benefitted from this wait time in that it arguably facilitated all (or at least most) of the security officers being ready to promptly assume their posts upon completion of the roll call at 5:30 and otherwise ensured a smooth shift transition. *Cf. Vega,* 36 F.3d at 426 ("if the workers were on duty so as to get an early start for their employer's benefit (*e.g.,* to assure that work would start promptly

---

[6] *See, e.g.,* 29 C.F.R. §785.11 ("Work not requested but suffered or permitted is work time."); 29 C.F.R. § 785.13 ("it is the duty of management to exercise its control and see that work is not performed if it does not want it to be performed").

at sunrise) or because of [the employer's] scheduling, the morning wait time is a compensable principal activity). Furthermore, although Defendant's representatives suggest that, barring an emergency, the security officers were not asked to go "on duty" prior to the start of their shifts, several of the employees deposed testified that they occasionally were asked to perform various duties, on a non-emergency basis, prior to the scheduled shift time. If this is true, having the security officers "ready and waiting," if they were needed, provided some benefit to Defendant.

On the other hand, the extent to which the waiting security officers were free from duty such that they were able to use this time for their own purposes is likewise not without some uncertainty. For instance, certain testimony offered by Defendant suggests that the security officers arrived and donned their gear when they chose, and then were free to eat, drink, and socialize, or even to return to their automobiles, without obligation, while they awaited the start of their shifts. While agreeing that much of this time was spent drinking coffee, talking with other security guards, and going outside to smoke, some of the employees testified, as previously indicated, that this time was occasionally cut short by duty requests, for which they always were available, that they sometimes discussed work issues, and that their activities were restricted such that they were not even allowed to read a newspaper during their wait. Presumably, the security guards also were not permitted to leave the premises once they had donned their gear.

Nor has evidence been offered indicating whether the employees were free to make personal telephone calls, do personal paperwork, sleep, or perhaps watch television or engage in other recreational activities. Finally, while this wait seemingly lasted approximately 30 minutes for some, it likely was simply a shorter "rest period" for others. *See* 29 C.F.R. §758.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. . . promote efficiency . . . are customarily paid for as working time . . . [and] must be counted as hours

9

worked.");  29 C.F.R. §785.15 (addressing short periods of compensable inactivity during the workday that are unpredictable as to their timing and duration).

Assuming that the additional time in question otherwise is compensable, Defendant urges that it is nevertheless legally *de minimus*, and thus not included in the "hours worked" calculation.  Relative to this issue, careful review of *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692-93, 66 S. Ct. 1187, 1195 (1946), as well as other decisions providing a thorough analysis of the *de minimus* doctrine, reveals that the doctrine does not apply to certain time periods merely because they are short in duration and separable from other compensable work time.  Rather, the doctrine excuses the employer from compensating employees only for very short periods of work time that also, as a practical administrative matter, cannot be adequately recorded for payroll purposes.  *See, e.g., Mireles,* 899 F.2d at 1414 (waiting time of less than 15 minutes was not *de minimis* when employer could track this additional time by making minor changes to the existing administrative procedures).

Stated differently, the doctrine focuses on employee work time, occurring outside of the fixed or regular work period, that cannot feasibly be "captured" for payroll purposes by the employer, using reasonable administrative and time-keeping procedures, because of its short and indefinite duration and uncertain occurrence.  *See, e.g.,* 29 C.F.R. §785.47.  Thus, the doctrine seeks to reasonably balance the employee's burden of working for a short period of time without compensation with the employer's burden of accounting for all employee work time.

In determining whether the *de minimis* doctrine applies in a given situation, the Court will consider, given industrial realities:  (1) the practical administrative difficulty of recording and/or monitoring the additional time;  (2) the aggregate amount of the additional compensable time;  (3) the regularity of the additional work;  and (4) the amount of additional time devoted to the matter

on a daily basis. *See Mireles,* 899 F.2d at 1414 (waiting time of less than 15 minutes was not *de minimis* when employer could track this additional time by making minor changes to the existing administrative procedures); *Lindow v. United States,* 738 F.2d 1057, 1062-64 (9th Cir. 1984) (7-8 minutes of daily working time was *de minimus* because of difficulty monitoring the pre-shift activity, the administrative difficulty in recording the time, and the irregularity with which the additional work occurred); *Johnson v. RGIS Inventory Specialists,* Civ. Action No. 05-389, 2007 WL 5185481,* 20-22 (E.D. Tex. 2007) (court unable to determine that fifteen minutes of waiting and donning time was *de minimus* as a matter of law); *see also* 29 C.F.R. §785.47.

Applying these principles here, it seems likely that the pre-shift time devoted to donning security gear, and then waiting for roll call, can be tracked without significant administrative difficulty or expense given the existence of key logs providing sign-in times for duty keys, and the established 5:30 starting time for each shift. Given the pre-shift donning procedures employed prior to April 2006, moreover, this additional time ostensibly was incurred regularly, if not daily, and likely yields a significant amount of additional time, when considered in the aggregate, for at least some employees. Because the parties' treatment of this issue in their briefs and supporting evidence is not sufficiently tailored to the inquiry outlined herein, however, the Court is unable to render summary judgment in either side's favor on this issue at this juncture.

Assuming the compensability of the donning and subsequent waiting time at issue here, Defendant nevertheless urges that the additional half-hour of pay given to Plaintiffs for each shift, regardless of whether they actually ended their shift after 12 hours or 12.5 hours, fully compensated Plaintiffs for their work time. On this point, neither side's submissions convince the Court that summary judgment is appropriate relative to any additional pay received on a given day by Plaintiffs who actually worked less than the 12.5 hours for which they were paid. Indeed, the

11

parties provide little helpful authority addressing whether any such amount should or may be credited against any additional compensation found to be owed Plaintiffs for time expended prior to the 5:30 roll call. In any event, to the extent any such credit applies, it may simply impact damage calculations, rather than absolving Defendant of any and all liability.

Finally, the Court turns to the questions of liquidated damages and Defendant's alleged "willfulness" in terms of establishing the applicable statute of limitations. Under the FLSA, an employer who violates the statute is liable for the amount of unpaid compensation *and* an additional equal amount as liquidated damages *unless* the employer demonstrates that its act or omission was in good faith *and* that reasonable grounds existed for believing that the act or omission did not violate the statute. *See* 29 U.S.C. §§ 216(b) and 260. This is a substantial burden to be borne by the defendant employer. *Mireles*, 899 F.2d at 1415. Demonstrating mere ignorance of the law is not a sufficient defense.

Relative to the applicable statute of limitations, the FLSA provides that suits for unpaid wages must be commenced within two years after the cause of action accrues, unless the cause of action arises from a "willful" violation of the statute. *See* 29 U.S.C. § 255. A "willful" violation occurs when the employer knew its conduct was prohibited by the statute, or showed reckless disregard with respect to whether the conduct was so prohibited. *Mireles*, 899 F.2d at 1416 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 1681 (1988)).

Given the Court's foregoing treatment of the question of Defendant's liability, and considering that trial of liability and damages has been bifurcated in this matter, the Court likewise declines to render a final ruling on the question of liquidated damages and the willfulness of any statutory violation established. To the extent that a violation is found to have occurred, the Court will require additional information from the parties relative to Defendant's good faith and the

reasonableness of its beliefs regarding the lawfulness of its conduct.  This should include, but not be limited to, any evidence of affirmative actions taken by Defendant to determine controlling legal principles relative to the unpaid donning and subsequent waiting time that occurred prior to its April 2006 policy change, as well as any notice received during the relevant time period of the alleged unlawfulness of these procedures.

       Additionally, relative to these issues, Plaintiff strongly emphasizes separate litigation and a settlement occurring between Defendant and security employees of the Three Mile Island nuclear facility.  At present, Plaintiffs have not put forth sufficient information regarding that proceeding for the Court to determine its relevance here.  For instance, it is the Court's understanding that that suit was filed in January 2006, which is only approximately four months prior to Defendant's changing of its policies at the Waterford III facility relative to pre-shift donning in April 2006.  Further, to the Court's knowledge,  the settlement of the Three Mile Island dispute, as well as the motion to enforce that settlement, which are cited by Plaintiffs as evidence of willfulness, occurred several months *after* Defendant ended the procedures in April 2006 that Plaintiffs contend were unlawful.

       Thus, going forward, Plaintiffs will need to demonstrate how these subsequent events are indicative of wilfulness relative to policies and procedures in place at the Waterford III facility prior to April 2006.  Finally, the Court likewise is not presently convinced that alleged discovery violations, evasive deposition testimony, and any other *litigation* conduct found to have been inappropriate, all of which occurred in 2007-2008, demonstrate legal willfulness relative to the time period in question.

### III. <u>Conclusion</u>

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.  **IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED**.

Given the Court's rulings herein, the parties are instructed to promptly undertake good-faith efforts to reach additional stipulations for trial relative to material factual and legal issues. Similarly, the parties are to appropriately take these rulings into account in preparing their proposed findings of fact and conclusions of law, which the Court expects to be *fully* supported by citations to evidence, including anticipated testimony, and relevant legal authorities.

New Orleans, Louisiana, this <u>1st</u> day of July 2008.

                                                KURT D. ENGELHARDT
                                                UNITED STATES DISTRICT JUDGE

<u>Clerk to Copy:</u>
Magistrate Judge Sally Shushan